IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PAN AMERICAN GRAIN CO. INC.; PAN AMERICAN GRAIN MANUFACTURING & PAN AMERICAN GRAIN PROPERTIES | |
| **Plaintiffs** | CIVIL NO. 10-1936 (GAG) |
| **v.** | |
| | **JURY TRIAL DEMANDED** |
| HORIZON LINES, LLC; SEA STAR LINE, LLC; CROWLEY LINER SERVICES, INC.; TRAILER BRIDGE, INC. GABRIEL SERRA; R. KEVIN GILL; GREGORY GLOVA; PETER BACI; ALEXANDER G. CHISHOLM; LEONARD SHAPIRO; JOHN DOE; RICHARD ROE; CORPORATION A; CORPORATION B; CORPORATION C | |
| **Defendants** | |

## AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

Plaintiffs, Pan American Grain Co. Inc., ("PAGC"); Pan American Grain Manufacturing ("PAGM") and Pan American Grain Properties ("PAGP") through their undersigned attorneys, and for their Complaint in this matter, allege as follows:

### NATURE OF THE CASE

1.   The instant suit is brought pursuant to Section 1 of the Sherman Act, 15 USC Section 1, and Section 4 of the Clayton Act, 15 USC Section 15, as well as the Puerto Rico Antitrust

Law, 10 LPRA Section 257 et seq., for treble damages and permanent injunctive relief as a result of the illegal and anticompetitive combination and conspiracy between and among Defendants to fix prices and to suppress and eliminate competition in the market for maritime freight transportation services between the continental United States and Puerto Rico ("PR Cabotage") with the purpose and effect of monopolizing and restraining trade in that market. The combination and conspiracy allowed the corporate defendants to charge supracompetitive prices to Plaintiffs.

2.   Since in or about May 2002 and continuously until as late as April 2008, Defendants and their coconspirators, which had previously been competing directly in the market for PR Cabotage services, through meetings and other communications, entered into agreements to allocate customers, rig bids submitted to buyers of PR Cabotage services including Plaintiffs and agreed to fix the rates, surcharges, and other fees charged to customers including Plaintiffs.

3.   At all times relevant hereto the corporate Defendants controlled 100% of the market for PR Cabotage services.

4.   The combination and conspiracy between Defendants was aimed to eliminate all competition, including price competition, between the Defendants in the market for PR Cabotage services, and otherwise harming competition enabling Defendants to charge

higher rates and fees than they would have charged had they not entered into the agreement. Plaintiffs did in fact pay higher rates and fees to Defendants that they otherwise would have, as a result of Defendant's conduct.

5.    The combination and conspiracy Defendants is the subject of an ongoing joint United States Department of Justice and Federal Bureau of Investigation criminal grand jury investigation. At least five individual Defendants – all decision – making executives of one or more of the corporate Codefendants, wrong others "Horizon", "Sea Star" – have pleaded guilty to related criminal charges.

## IDENTITY OF THE PARTIES

6.    **Pan American Grain Co., Inc.** ("PAGC") Pan American is a mayor importer of grains, grains by-products and other ingredients used by it for manufacturing animal feed and fertilizers. PAGC principal offices are located at Guaynabo, Puerto Rico.

7.    **Pan American Grain Manufacturing** ("PAGM") is by far the largest importer of rice for its milling plant in Puerto Rico and its subsequent packing for consumers consumption.  It also exports rice and numerous other products destined to eastern sea-board of the United States. PAGM principal offices are located at Guaynabo, Puerto Rico.

8. **Pan American Grain Properties** ("PAGP") is a mayor importer of gasoline to Puerto Rico. PAGP principal offices are located at Guaynabo, Puerto Rico.

9. During the time frame of the conspiracy, price-fixing and other illegal acts also averred herein, between May 2002 and April 2008, PAGC, PAGM and PAGP had purchased substantial amount of maritime freight, both south-bound and north-bound, mainly with "Horizon", "Crowley" and "Sea Star" for the transportation of its goods coming in from U.S. Port or going into U.S. Ports. The rates, charges and fees paid by Plaintiffs to the co-defendants herein were in excess of what they would had paid, but for antitrust violations object of the instant complaint. Hence Plaintiffs have been deprived and have suffered loss of property as a direct consequence of the conspiracy for overcharges, injuries provoked in violation of the antitrust statutes.

10. Defendant **Horizon Lines, LLC** is a limited liability corporation organized under the laws of the State of Delaware with its principal place of business at 4064 Colony Road, Suite 201, Charlotte, North Carolina 28211, hereinafter Horizon. During all pertinent times to the Complaint, Horizon, sold ocean transportation services to customers in Puerto Rico including Plaintiffs.

11.  Defendant **Gabriel Serra ("Serra")** is an individual who is presently incarcerated at Federal Prison Camp located at 110 Raby Avenue, Pensacola, Florida 32509, Register No. 32577-018. During all times pertinent to the Complaint, Serra was the Senior Vice President and General Manager for Horizon's Puerto Rico division and responsible for determining the Horizon price for PR Cabotage services. Serra has already pleaded guilty to government charges that he participated in a conspiracy to illegally fix the prices and allocate customers in the market for PR Cabotage services during the period between May 2002 and April 2008. Serra was sentenced on May 12, 2009 to serve a term of thirty four (34) months of imprisonment.

12.  Defendant **R. Kevin Gill ("Gill")** is an individual who, is presently incarcerated at FCI Morgantown, Federal Correctional Institution, located at 446 Greenbag Road, Route 857, Morgantown WV 26501, Register No. 32574-018.  From at least as early as May 2002 until December 2005, Gill was the Marketing and Pricing Director for Horizon's Puerto Rico division and was responsible for determining Horizon's prices for PR Cabotage services. From December 2005 until at least April 2008, ,Gill was Horizon's Vice President of Merketing and was responsible for marketing Horizon's PR Cabotage services. Gill has already pleaded guilty to government charges that he participated in a conspiracy to illegally fix the prices and

allocate customers in the market for PR Cabotage services during
the period between May 2002 and April 2008. Gill was sentenced
on May 12, 2009 to twenty nine (29) months of imprisonment.

13. Defendant **Gregory Glova ("Glova")** is an individual who
is presently incarcerated at FCI Edgefield, Federal Correctional
Institution, located at 501 Gary Hill Road, Edgefield, SC 29824,
Register No. 32576-018. From December 2005 until at least April
2008, Glova was the Marketing and Pricing Director for Horizon's
Puerto Rico division and was responsible for determining
Horizon's price for PR Cabotage services. Glova has already
pleaded guilty to government charges that he participated in a
conspiracy to illegally fix the prices and allocate customers in
the market for PR Cabotage services during the period between
December 2005 and April 2008. Glova was sentenced on May 12,
2009 to twenty (20) months of imprisonment.

14. Defendant **Sea Star Line, LLC**, hereinafter "Sea Star"
is a corporation organized under the laws of the State of
Delaware with its principal place of business at 10550 Deerwood
Park Boulevard, Suite 509, Jacksonville, Fl 32256. Sea Star
accounts for approximately 21 percent of the PR Cabotage market.
During all pertinent times to the Complaint, Sea Star, sold
ocean transportation services to customers in Puerto Rico,
including Plaintiffs.

15.  Defendant **Peter Baci ("Baci")** is an individual who, is presently incarcerated at the Federal Prison Camp located at 110 Raby Avenue, Pensacola, Florida, Register No. 32572-018. During all pertinent times to the Complaint, Baci was the Senior Vice President of Yield Management for Sea Star and responsible for determining Sea Star's price for PR Cabotage services. Back has already pleaded guilty to government charges that he participated in a conspiracy to illegally fix the prices and allocate customers in the market for PR Cabotage services during the period between May 2002 and April 2008. Baci was sentenced on January 30, 2009 to forty eight (48) months of imprisonment.

16.  Defendant **Alexander G. Chisholm ("Chisholm")** is an individual who, upon information and belief, resides at 2705 Dahlonega Drive, Jacksonville, Florida. During all times pertinent to the Complaint, Chisholm was the Assistant Vice President of Yield Management for Sea Star. Chisholm has already pleaded guilty to government charges that he destroyed evidence relevant to the illegal conduct alleged herein. Chrisholm was sentenced on May 12, 2009 to seven (7) months of imprisonment.

17.  Defendant **Saltchuk Resources, Inc. ("Saltchuk")** is a corporation organized under the laws of the State of Washington with its principal place of business in Seattle, Washington. Saltchuk is a privately owned company and has a ninety percent equity interest in Sea Star. Prior to the illegal combination

and conspiracy between Defendants alleged herein, Saltchuk's subsidiary Sea Star competed with the other corporate Codefendants in the market for PR Cabotage services.

18. Saltchuk and Sea Star are in essence operated as a single commercial enterprise. Both Saltchuk and Sea Star participated and were actively involved in the conspiracy alleged herein. Both Saltchuk and Sea Star are active participants in the combination and conspiracy and each is liable for this unlawful conduct alleged herein with each, among other things, participating in and benefiting from the combination and conspiracy. Specifically, Codefendant Leonard Shapiro, as a major shareholder and on behalf of Saltchuk – although not an officer of Sea Star – devised a scheme to raise prices for PR Cabotage services by colluding with Sea Star's competitors in the market to eliminate competition, fix prices, and allocate customers. To this end, Shapiro first proposed the idea to codefendant Serra, then at executive at Horizon, who agreed to the scheme proposed, and thus become a willing participant in the conspiracy. Shapiro then directed codefendant Baci, then an executive at Sea Star to communicate with Horizon executives Gill and later Glova, to implement the unlawful combination. As 90% owner of Sea Star, Saltchuk had a strong motive to conspire with Sea Star's competitors, in order to

enhance its subsidiary's revenues and profits by eliminating competition in the PR Cabotage services market.

19. Defendant **Leonard Shapiro ("Shapiro")** is a founding partner of Saltchuk Resources, Inc. Shapiro was a founding participant of the scheme of colluding with the other carriers that serve Puerto Rico to allocate and fix the prices of ocean transportation services offered to customers in Puerto Rico and participated and directed other to implement such combination and conspiracy in the period between May 2002 and April 2008.

20. Defendant **Crowley Liner Services, Inc. ("Crowley")** is a Delaware corporation with its principal place of business at 9487 Regency Square Boulevard, Jacksonville, Florida. During all pertinent times to the complaint, Crowley sold ocean transportation services to customers in Puerto Rico, including Plaintiffs, Crowley accounts for approximately 31 percent of the PR Cabotage market.

21. Defendant **Trailer Bridge, Inc. ("Trailer Bride")** is a Delaware corporation with its principal place of business in Jacksonville, Florida. During all pertinent times to the complaint, Trailer Bride sold ocean transportation services to customers in Puerto Rico. Trailer Bridge accounts for approximately 14 percent of the PR Cabotage market.

22. Defendant John Doe and Richard Roe, as well as Corporation A, B and C, are persons on entities whose identity

is presently unknown and who participated as coconspirators in the violations alleged herein and for which Plaintiffs seek relief, and performed acts and made statements in furtherance thereof.

23. Whenever asserted in this complaint to a statement, acts, conducts, relationship or transaction of any corporation or legal entity, the allegation means that the corporation or entity acted by and through its directors, members, partners, officers, employees, affiliates, or agents, while engaged in the management, direction, control or conduct of the corporation's or entity's business and acting within its scope of authority.

## JURISDICTION AND VENUE

24. This court has subject matter jurisdiction pursuant to 28 USC §§1331 and 1337 and 15 USC §§ 1 and 15. Jurisdiction exists over the Puerto Rico law claims pursuant to 28 USC §1367.

25. Venue is proper in this district, pursuant to 15 USC §1391(b) and (c), as (i) one or more of the defendants reside, transact business or are found herein, (ii) there is personal jurisdiction over them because each has transacted business, maintained continuous and systematic contacts, purposefully availed themselves of the benefits of doing business, and committed acts in furtherance of the alleged combination and conspiracy in Puerto Rico, and (iii) a substantial part of the

events giving rise to the claim occurred in Puerto Rico or had its deleterious and damaging effects to Plaintiffs businesses in Puerto Rico.

## INTERSTATE TRADE AND COMMERCE

26. Defendants' conduct has taken place within the flow of a substantially affected interstate commerce between the continental United States and Puerto Rico. For the period between May 2002 and April 2008. Plaintiffs paid codefendants mainly, Horizon, Crowley, Sea Star and Trailer Bridge, Inc. millions of dollars for the purchase of maritime freight transportation services for goods shipped between the continental United States and Puerto Rico, which were the object of defendants' combination and conspiracy.

## RELEVANT MARKET

27. For the claims that may require market definition, the relevant marker for purposes of these allegations is the market for maritime freight transportation services between the continental United Sates and Puerto Rico, ie, the market for PR Cabotage services.

28. At all relevant times, prior to entering into the combination and conspiracy amongst themselves as alleged herein, defendants competed in the "relevant market".

29.  The combination and conspiracy alleged herein however is *per se* illegal and requires no allegations of market definition.

30.  Plaintiffs also allege in the alternative, that the combination is anticompetitive and illegal under the "Rule of Reason".

31.  Among other facts alleged herein, the Defendants' conduct ended and destroyed competition between direct competitors in the market of PR Cabotage services, and allowed the corporate Defendants to charge supracompetitive prices to Plaintiffs. Such conduct had no pro-competitive benefits.

32.  At all relevant times, there have been no reasonable interchangeable substitutes for the PR Cabotage services offered by the corporate Defendants. The Jones Act, 46 USC §55101 et seq. essentially grant to U.S. flag vessels the exclusive right to engage in ocean shipping of good between the Continental U.S. and Puerto Rico.

33.  In the case of Puerto Rico, these legal restrictions contributed to market concentration. As a result thereof, during the relevant period, the applicable statute facilitated that Horizon, Sea Star, Crowley and Trailer Bridge controlled 100% of the market for PR Cabotage services.

34. The reduced number of market participants paved the way for the illegal implementation of the combination and conspiracy among competitors outlined herein.

35. There are no economically viable substitutes for PR Cabotage services which can act as competitive checks on pricing for these services. Transportation of large amounts of goods via air freight is prohibitively expensive and there are no road or rail routes between the continental U.S. and Puerto Rico.

36. Moreover, there are substantial barriers into the market for PR Cabotage services including among others (a) previously mentioned legal restrictions on who may provide the services; (b) entrenched market positions of the four defendants carriers that serve Puerto Rico; (c) large sunk costs required for the purchase o development of a fleet of ships and to build or acquire the substantial infrastructure needed to handle and operate container ships including port space within Puerto Rico; and (c) the need to develop a broad base of customer relationships to realize economies of scale.

37. There have not been any successful entrants to the market for PR. Cabotage services in the nearly eight years since the inception of the combination and conspiracy alleged herein in May 2002.

38. In addition, the demand for PR Cabotage services is inelastic. Due to the geographic reality of Puerto Rico, and the

prohibitive cost of alternative transportation methods, Puerto Rican consumers of PR Cabotage services, such as Plaintiffs, lack any substitute for the services provided by the corporate defendants. This circumstance allowed defendants through their illegal combination and conspiracy, to demand supracompetitive prices for their services to Plaintiffs.

## THE ILLEGAL AGREEMENT

39. Prior to 2002, Navieras was a key competitor in the market for PR Cabotage service. According to Trailer Bridge; "From- 1998 to 2002, the sustained volume driven business strategy of Navieras, the then-largest operator in the market bad led to a poor pricing environment and low capacity utilization."

40. Following Navieras' exit from the market, in 2002 Shapiro, a Saltchuk executive, devised a scheme to raise the prices in the market for PR Cabotage services where Saltchuk subsidiary Sea Star competed, by entering into secret agreement with Sea Star's competitors in this market to fix prices, allocate customers, rig bids, and otherwise eliminate competition in this market.

41. Shapiro sharpened his scheme with Serra's aid and assistance, then a Senior VP and General Manager of Horizon. Serra was among the founders of the scheme and as such became a willing participant in the illegal combination and conspiracy.

42.   Shapiro instructed Baci, then an executive at Sea Star LLC, to implement the agreed-upon illegal combination and conspiracy with his counterparts at Horizon, Gill, and later his replacement, Glova.

43.   Baci had been a long-time Crowley employee before joining Sea Star. While at Crowley he had developed relationships with Chisholm and Tom Farmer. Both of whom worked for Baci at Crowley for approximately 10 years. Farmer participated in the combination and conspiracy on Crowley's behalf.

44.   Upon information and belief, Trailer Bridge also agreed to participate in the combination and conspiracy, together with the above named Sea Star, Horizon and Crowley.

45.   As a result of this illegal combination and conspiracy, during the period from May 2002 to April 2008, defendants exchanged numerous communications via fax, email, in personal meeting and over the telephone through which they shared competitively sensitive information including prices being offered by each of them to existing and potential customers. These exchanges occurred on a daily, weekly and monthly basis throughout this period.

46.   As part of the combination and conspiracy, defendants agreed that each of them would maintain a certain market share.

47.   During this period from May 2002 to April 2008, defendants used external email accounts using pseudonyms to exchange information about pricing and bid strategies to be used whenever bidding for the business of PR Cabotage service customers. Defendants agreed in advance to determine for each customer of PR Cabotage services, which defendant would deliberately bid high and which defendant would bid the lowest so as to win the customer's business. This exchange of information allowed defendants to know in advance of the bidding process the prices that would be offered by their competing bidders, and thus allowed defendants to rig the bids so as to allocate the business of each customer among themselves.

48.   During the period from May 2002 to April 2008, the prices offered by each defendant to PR Cabotage service customers were agreed-upon in advance by defendants, through the mutual exchange of pricing information. This allowed defendants to eliminate competition in the market and fix prices for PR Cabotage service at a supracompetitive level.

49.   During the period from May 2002 to April 2008, whenever customer movement from one provider to the other caused defendants' relative market shares to deviate from their agreed upon ranges, defendants would rig bids and otherwise agree to offer agreed upon pricing to other customers so as to allocate customers and return market shares to their agreed-upon levels.

## ANTICOMPETITIVE EFFECTS

50. Defendants' illegal acts and practices have caused anticompetitive effects the market for PR Cabotage services. The rates, charges and other fees charged by Horizon LLC, Sea Star LLC and Crowley to plaintiff and Packers were maintained at artificially high and supracompetitive levels. Plaintiffs paid higher rates, charges and fees than they otherwise would have paid.

51. The combination and conspiracy scheme between defendants herein foreclosed competition between all four competitors in the relevant market for PR Cabotage services and enabled them to implement supracompetitive pricing in the relevant market.

52. The combination and conspiracy of defendants and their acts and practices in furtherance thereof have no procompetitive benefits.

53. Defendants' market allocation, rig bidding and price fixing scheme was but an illegal restraint of trade. Such practices were not ancillary to any legitimate business collaboration.

54. Plaintiffs had entered into numerous service agreements with various corporate defendants providing for PR Cabotage services during the period of defendants' illegal combination and conspiracy. Plaintiffs had been induced to

believe that the particular terms and conditions of such transportation service agreements were privileged business secrets not otherwise available to third parties.

55. Confidential transportation services agreements, purchased PR Cabotage services mainly from Horizon and Crowley between 2002 and 2008.

56. During every one of the years between 2002 and 2008, Horizon, Crowley and Sea Star EEC implemented significant increases in the rates, charges and fees to Plaintiffs in connection with their purchase of PR Cabotage services from these codefendants.

57. Pursuant to Defendants combination and conspiracy, defendants fixed the rates to be offered to customers such as Plaintiffs. Defendants also agreed to introduce additional surcharges and fees, and fixed these amounts as well. Defendants' conspiracy included adopting agreed-upon increases in these rates, charges and fees on a concerted basis. These surcharges and fees were not the result of legitimate economic considerations, but rather their combined scheme to increase the price to be paid by Plaintiffs and other customers of PR Cabotage services to supracompetitave levels.

## GOVERNMENT PROCEEDINGS AND RESULTING GUILTY PLEAS

58.  On April 17, 2008, it became public knowledge that the Department of Justice of the United States was conducting an investigation into the practices of the maritime cabotage carriers that serve Puerto Rico.

59.  A grand jury sitting in the Middle District of Florida investigated federal antitrust violations in connection with transportation of goods by sea between the continental United States and Puerto Rico.

60.  On or about April 17, 2008, the F.B.I. executed search warrants on the premises of Horizon LLC, Sea Star, Crowley Liner and Trailer Bridge.

61.  On October 1, 2008, Defendants Serra, Gill, Glova and Baci were charged by criminal information with one count of conspiracy to suppress and eliminate competition by rigging bids, fixing prices and allocating customers in violation of the Sherman           Act,           15           U.S.C. §1.

62.  Defendant Chisholm was charged on the same date with corruptly altering, destroying and concealing records and documents and attempting to do so with the intent to impair the availability of the records and documents for use in a federal grand jury investigation.

63.   Serra, Gill, Glova and Baci pleaded guilty to participating in a conspiracy to suppress and eliminate competition in the market for coastal water freight shipments between the United States and Puerto Rico by agreeing to allocate customers; agreeing to rig bids submitted to government and commercial buyers; and agreeing to fix the prices of rates, surcharges, and other fees charged to customers from at bait as early as May 2002 and until at least April 2008, in violation of the Sherman Antitrust Act §1, In the case of Glova in particular, he accepted that he joined and participated in that conspiracy since at least December 2005 and until April 2008.

64.   In connection with their guilty pleas, Serra, Gill, Glova and Baci accepted that they committed the acts set forth in the information against then including among other things that they:

    a.   participated in meetings, conversations, and communications in the United States and elsewhere to discuss customers, rates, and bids for the sale of Puerto Rico freight services;

    b.   agreed during those meetings, conversations, an4 communications to allocate customers of Puerto Rico freight services between and among the conspirators;

    c.   agreed during those meetings; conversations; and communications to fix stabilize and maintain rates,

surcharges, and other fees charged to customers of Puerto Rico freight services;

d.   agreed during those meetings, conversations, and communications to rig bids submitted to commercial and government customers of Puerto Rico freight services;

e.   sold Puerto Rico freight services at collusive and noncompetitive prices pursuant to the agreements reached;

f.   accepted payment for Puerto Rico freight services at collusive and noncompetitive prices;

g.   authorized or consented to the participation of subordinate employees in the conspiracy and;

h.   concealed the conspiracy and conspiratorial contacts though various means, including private e-mail accounts.

65. On October 20, 2008, Chisholm pleaded guilty in the United States District Court for the Middle District of Florida to a criminal information charging that on April 17, 2008, after he became aware of the investigation by the grand jury sitting in the Middle District of Florida into possible federal antitrust offenses in the maritime cabotage market of Puerto Rico, he corruptly *altered,* destroyed, and concealed records and documents and attempted to do so with the intent to impair the

availability of the records and documents for use of the investigation.

## ANTITRUST INJURY AND STANDING

66. During the period between May 2002 and April 2008, Plaintiffs paid over to Horizon, Sea Star, Crowley for PR and Trailer Bridge, Inc. Cabotage services.

67. Plaintiffs have suffered injury of the type and nature for which the antitrust laws were adopted to punish and remedy. Plaintiffs paid more for PR Cabotage services than they would have paid absent the combination and conspiracy between defendants. As a direct and proximate consequence of the unreasonable and illegal restraint of trade, combination and conspiracy created by defendants' agreement to eliminate competition in the relevant market, Plaintiffs were injured and financially damaged in their business and property, in amounts that are not presently determined. Plaintiffs as enforcers of the antitrust laws of virtue of the claims asserted herein is an immediate of Defendants' violations of the above federal statutes.

## FRAUDULENT CONCEALMENT

68. From 2002 through April 2008, defendants affirmatively and fraudulently concealed from Plaintiffs their agreement to fix, stabilize and maintain rates, surcharges and other fees

charged, to rig bids and allocate customers in the Puerto Rico maritime cabotage market.

69. Plaintiffs were never aware nor did they had any knowledge of defendants and their coconspirators' unlawful conspiracy.

70. Defendants fraudulent concealment their illegal conduct consisted, among other things: (i) meeting in secret; (ii) using pseudonyms and private email accounts; (iii) using coded language; (iv) misrepresenting the reasons for rates, charges and fees increases, and (v) destroying documents related to the combination and conspiracy.

71. Plaintiffs reasonably relied in good-faith on defendants' materially false representations regarding the causes for the rate, charge and fees increases.

72. It was not until April 17, 2008, when the Department of Justice of the United States, though its *actions,* revealed that it was investigating the defendants for possible antitrust violations, that Plaintiffs could have become **aware** of the acts that give rise to this complaint. Prior to that date, none of the facts or information available to Plaintiffs could nor did lead to the discovery of the conspiracy, even though both acted with reasonable diligence at all times.

73. As a result of Defendant's fraudulent concealment of the illegal combination and conspiracy, the running of the

applicable statute of limitations has been equitably tolled as to the claims and/or causes of action presented herein arising from the conduct that is the subject matter of this complaint.

### COUNT ONE

### SHERMAN ACT SECTION ONE

74. Plaintiffs realleges Paragraph "1" through Paragraph "71", as if fully transcribed herein.

75. Defendants illegal market division and price fixing agreement, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 when they participated in a conspiracy to suppress and eliminate competition in the market for coastal water freight shipments between the United States and Puerto Rico by agreeing to allocate customers; agreeing to rig bids submitted to government and commercial buyers; and agreeing to fix the prices of rates, surcharges, and other fees charged to customers from at least as early as May 2002 and until at least April 2008.

76. In the alternative, were Defendants conspiracies analyze under the Rule of Reason, defendants' combination and conspiracy is an unreasonable and illegal restraint of trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1.

77. Horizon, Sea Star, Crowley and Trailer Bridge were actual competitors in the market for PR Cabotage services

before the commencement of the above illegal combination and conspiracy scheme.

78. Defendants shared and express commitment to a common scheme designed to achieve the unlawful objective of allocating the market for PR Cabotage services and fixing prices therein.

79. Their illegal agreement created or caused significant competitive effects and no procompetitive benefits. It eliminated competition in the market for PR Cabotage services, raising prices paid Plaintiff. To the extent that there may had been any procompetitive benefits resulting from the agreement, they do not outweigh the agreement's anticompetitive effects.

80. Defendants' unlawful conduct resulted in artificially high supracompetitive prices charged by Defendants and paid by Plaintiff.

81. As a result of this violation of law, the prices for PR Cabotage services paid to Horizon, Sea Star, Crowley and Trailer Bridge by Plaintiffs were higher than they otherwise would have been.

82. Plaintiffs seek to recover from Defendants treble damages, costs of suit and attorney's fees, for injuries to their property and business increased costs to produce and consequent diminished assets.

**COUNT TWO**

**PUERTO RICO ANTITRUST LAW**

83. Plaintiffs repeat and reallege the allegations contained in Paragraph "1" through Paragraph "81", as though filly set forth herein.

84. Defendants entered into a per se illegal market division and price fixing agreement, in violation of the Puerto Rico Antitrust Law, 10 L.P.R.A. §257 et seq. when they participated in conspiracy to suppress and eliminate competition in the market for coastal water freight shipments between the United States and. Puerto Rico by agreeing to allocate customers; agreeing to rig bids submitted to government and commercial buyers; and agreeing to fix the prices of rates, surcharges, and other fees charged to customers from at least as early as May 2002 and until at least April 2008.

85. In the alternative, if evaluated under the Rule of Reason, Defendants' combination and conspiracy is an unreasonable restraint of trade in violation of the Puerto Rico Antitrust Law, 10 L.P.R.A. §257 et seq.

86. Prior to their agreement, Horizon LLC, Sea Star LLC, Crowley and Trailer Bridge were actual competitors in the market for PR Cabotage services.

87.  Defendants shared a conscious commitment to a common scheme designed to achieve the unlawful objective of allocating the market for PR Cabotage services and fixing prices therein.

88.  Their agreement created significant anticompetitive effects and no procompetitive benefits. It eliminated competition in the market for PR Cabotage services, raising prices paid by Plaintiffs. To the extent there were any procompetitive benefits resulting from the agreement, they do not outweigh the agreement's anticompetitive effects.

89.  Defendants' unlawful conduct resulted in artificially high supracompetitive prices charged by defendants to Plaintiffs.

90.  As a result of this violation of law, the prices for PR Cabotage services paid to Horizon, Sea Star, Crowley and Trailer Bridge by Plaintiffs were higher than they otherwise would have belief.

91.  Plaintiffs seek to recover from defendants treble damages; costs of suit and attorney's fees, for injuries to its property and business.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

1)  a declaration that the contract, combination or conspiracy, and the acts done in furtherance thereof

by Defendants and their Coconspirators, be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U.S.C. §§1; and the Puerto Rico Antitrust Law, 10 L.P.R.A. §257 et seq.

2)   that judgment be entered for Plaintiffs and against Defendants, jointly and severally, for three times the amounts of damages sustained by Plaintiffs as allowed by law, together with the costs of this action and reasonable attorney's fees and

3)   that Plaintiffs be awarded such other, further and different relief as the case may require and the Court may deem just and proper under the circumstances.

**JURY TRIAL DEMANDED**

Plaintiffs demand trial by jury pursuant to Federal Rule of Civil Procedure 38(b).

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 4th day of November, 2010.

/S/ *Antonio Moreda Toledo*
ANTONIO MOREDA TOLEDO
USDC No. 121610

/S/ *Irma R. Valldejuli*
IRMA R. VALLDEJULI
USDC No. 124303
Moreda & Moreda, PSC
P O Box 366066
San Juan, PR   00936

Phone (787) 754-6290
Fax: (787) 753-2768
E-mail:  moreda@prtc.net
E-mail: irvalldejuli@moredalaw.com

/NS